**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | | |
|---|---|---|
| **JULIA PRICELLA FERRI** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 1:22-CV-508-MAC** |
| | § | |
| **COMMISSIONER OF SOCIAL** | § | |
| **SECURITY** | § | |
| | § | |
| **Defendant.** | § | |

**REPORT AND RECOMMENDATION OF**
**UNITED STATES MAGISTRATE JUDGE**

The Plaintiff, Julia Pricella Ferri ("Ferri"), requests judicial review of a final decision of

the Commissioner of Social Security Administration with respect to Ferri's application for

disability-based benefits. This action is before the undersigned magistrate judge for review,

hearing if necessary, and submission of a report with recommended findings of fact and

conclusions of law.[1] The undersigned finds that the administrative law judge's decision contains

reversible error and is not supported by substantial evidence, and therefore recommends remanding

the decision denying benefits.

**I.  JUDICIAL REVIEW**

United States district courts may review decisions of the Commissioner of the Social

Security Administration. 42 U.S.C. § 405(g) (2020). The scope of judicial review is limited,

however, to determining whether (a) the Commissioner applied proper legal standards and (b) the

decision is supported by substantial evidence. *See Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir.

---

[1] General Order 05-06 refers civil proceedings involving appeals from decisions of the Commissioner of Social Security Administration to magistrate judges serving the divisions where the cases are filed. *See also* 28 U.S.C. § 636(b)(1)(B) (2009) and E.D. TEX. CIV. R. CV-72 for the Assignment of Duties to United States Magistrate Judges.

1995); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).   When the Commissioner applies proper law and the decision is supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed.   *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also* 42 U.S.C. § 405(g).

Reviewing courts, therefore, give the Commissioner's decisions great deference.   *Leggett,* 67 F.3d at 564.   Courts may not re-weigh evidence, try issues *de novo*, or substitute their judgments for those of the Commissioner.   *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). A court cannot reverse the Commissioner simply because the court might have decided the case differently in the first instance*.   Elfer v. Texas Workforce Comm'n*, 169 F. App'x 378, 380 (5th Cir. 2006); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (stating that the court may not "substitute [its] judgment for that of the Secretary").   Rather, it is for the Commissioner to weigh evidence and resolve conflicts.   *See Anthony*, 954 F.2d at 295; *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

When the Commissioner fails to apply correct principles of law, or when "substantial evidence"[2] does not support the Commissioner's decision, the governing statute authorizes a reviewing court to enter, upon the pleadings and the transcript of the record, a judgment modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.   *See* 42 U.S.C. § 405(g).   Thus, courts have power to remand for further administrative proceedings, or they may direct the Commissioner to award benefits without a rehearing.   Ordinarily, courts remand for further administrative proceedings to address and cure

---

[2]  "Substantial evidence" is a term of art meaning "more than a mere scintilla."   *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Anthony v. Sullivan*, 954 F.2d at 292.   Evidence is "substantial" when it is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion.   *Biestek,* 139 S. Ct. at 1154*; Richardson v. Perales*, 402 U.S. at 401; *Marcello v. Bowen*, 803 F.2d 851, 853 (5th Cir. 1986).

deficiencies.    *See, e.g., Newton v. Apfel*, 209 F.3d 448, 460 (5th Cir. 2000).

## II.  BACKGROUND

### A.    Procedural History

Ferri applied for disability insurance benefits on January 2, 2020, due to impairments that allegedly became disabling on September 20, 2019.    (Tr. 13, 238-245.)    Ferri, however, returned to work for several months in 2019 and 2020, so she amended her onset date to April 10, 2020. (Tr. 13, 40-41, 50-51.)    Following the denial of her claim, she requested a hearing before an administrative law judge which was held on June 8, 2022.    (Tr. 34-70.)    Ferri and Donald G. Rue, a vocational expert, testified at the hearing.    (*Id.*)

On August 10, 2022, Administrative Law Judge William Sharp (ALJ Sharp) issued a decision denying Ferri's application.    (Tr. 13-23.)    Ferri requested review of the ALJ's decision by the Appeals Council, which was denied on September 19, 2022, thereby prompting this appeal. (Tr. 1-4.)

### B.    Factual History

Ferri was 60 years old at the alleged onset date of disability, with a college education and past work experience as an imaging services manager and radiologic specialist.    (Tr. 22-23.) Ferri's application was denied at the initial and reconsideration levels.

### C.    Administrative Decision and Appeal

ALJ Sharp utilized the five-step sequential analysis model specified by regulations and approved by courts in reaching his decision denying Ferri's application.[3]    At step one, ALJ Sharp

---

[3]  Pursuant to 20 C.F.R. § 404.1520(a)-(f), the five steps are generally as follows:
   1.  The Commissioner ascertains *whether an applicant currently engages in substantial gainful activity*. (If so, a finding of non-disability is entered, and the inquiry ends.)
   2.  The Commissioner determines *whether an applicant has a severe impairment or combination of impairments.*   (If not, the inquiry ends, and a finding of non-disability is entered.)
   3. The Commissioner determines *whether any severe impairment(s) equals or exceeds those in a Listing of*

Case 1:22-cv-00508-MAC-CLS    Document 18    Filed 01/26/24    Page 4 of 20 PageID #: 2420

found that Ferri has not engaged in substantial gainful activity since April 10, 2020, the amended

alleged onset date.   (Tr. 15.)   At steps two and three, he found that Ferri has the following severe

impairments: right shoulder arthropathy, fibromyalgia, hypothyroidism, obesity, PTSD,

depression, and anxiety, but these impairments do not meet or medically qualify under the criteria

of any listed impairment in the regulations at 20 C.F.R. pt. 404, subpt. P, app 1 (Listed

Impairments) for presumptive disability.   (Tr. 15-18.)   ALJ Sharp determined that Ferri

retained the residual functional capacity (RFC) to perform light work, but can never climb ladders,

ropes, or scaffolds; can frequently stoop and crouch; can frequently reach and handle with the right

upper extremity; can frequently interact with supervisors and coworkers, but only occasionally

interact with the public; can frequently adapt to changes in workplace methods and routine; and

can frequently perform jobs requiring a forced-production pace or assembly-line pace.   (Tr. 18-

22.)   Ultimately, ALJ Sharp found Ferri was not disabled and was able to perform past relevant

work at step four as an imaging services manager.   (Tr. 22.)    Consequently, ALJ Sharp did not

reach step five.

### III.   POINTS OF ERROR

Ferri asserts that ALJ Sharp failed to properly evaluate the medical opinions in this case

with regard to her mental impairments.   She states that she should be limited to unskilled jobs at

best due to her impairments.   (Doc. #15.)   The Defendant argues in response that ALJ Sharp

properly considered the medical opinions, and Ferri is merely asking the court to re-weigh the

---

*Impairments, 20 C.F.R. Subpt. P, Appendix 1* ("the Listings").   (If so, disability is presumed, and benefits are awarded.   If not, the analysis continues.)

4.   The Commissioner determines *whether any impairment(s) prevents the claimant from engaging in regular previous employment*.   (If so, a *prima facie* case of disability is established and the burden of going forward (to the fifth step) shifts to the Commissioner.   *See Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987)).

5.   The Commissioner determines *whether other work exists in the national economy which the applicant can perform*.   (If so, the burden shifts back to the applicant to show he cannot perform the alternative labor.   *See id.*; *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986)).

same evidence and come to a different conclusion.   (Doc. #16.)   In her reply, Ferri asserts that the opinions of her treating doctors (Drs. Ahmed and Boyles), the independent examiners (Drs. Hirsch and Jones), and the state agency psychological consultants all contradict ALJ Sharp's mental RFC findings requiring remand of her case.   (Doc. #17.)

## IV.   DISCUSSION AND ANALYSIS

### A.      Residual Functional Capacity

The regulations state that residual functional capacity (RFC) means "the most you can still do despite your limitations."   20 C.F.R. § 416.945 (2012).   Thus, when making an RFC determination, the ALJ decides whether an applicant retains the physical and mental abilities necessary to perform activities generally required by competitive, remunerative work.   *See id.*; SSR 96-8p, 1996 WL 374184 (July 2, 1996).   The RFC involves three components: physical abilities, mental abilities, and other abilities affected by impairments.   20 C.F.R. § 416.945(b)-(d).

A person's RFC is assessed at steps four and five of the sequential evaluation process.   At that point, the person has demonstrated an impairment of a magnitude sufficient to significantly limit the ability to do basic work activities (step two), but not so severe as to match listed impairments (step three) from which disability is presumed.   Thus, the Commissioner must determine whether, despite the presence of severe impairments, the person retains functional capacity to perform past relevant work (step four), and, if not, any available alternative work (step five).   SSR 96-8p, 1996 WL 374184 (July 2, 1996).   An ALJ's assessment of a person's RFC forms the basis of a hypothetical question to which a vocational expert may respond with an opinion as to whether there is alternative available work that a person with the applicant's

impairments and functional limitations can perform.  *See Frazier v. Colvin*, No. A-11-CA-901-SS, 2013 WL 12393909, at *5 (W.D. Tex. Aug. 30, 2013).

In assessing an applicant's physical, mental, and sensory abilities, the regulation directs an ALJ to consider the claimant's exertional and non-exertional capacity.  Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling.  SSR 96-8p, 1996 WL 374184 (July 2, 1996). Non-exertional capacity considers all work-related limitations and restrictions that do not depend on an individual's physical strength, *i.e.*, all physical limitations and restrictions that are not reflected in the seven strength demands, and mental limitations and restrictions, including an individual's abilities to perform physical activities such as postural (*e.g.*, stooping, climbing), manipulative (*e.g.*, reaching, handling), visual (seeing), communicative (hearing, speaking), and mental (*e.g.*, understanding and remembering instructions and responding appropriately to supervision).  *Id.*  In addition to these activities, the ability to tolerate various environmental factors (*e.g.*, tolerance of temperature extremes) is also a non-exertional capacity consideration. *Id.*

In the present action, the ALJ concluded that Ferri can perform light work with certain limitations as set forth above.  As to her mental RFC, which is at issue here, ALJ Sharp gave the following limitations: can frequently interact with supervisors and coworkers, but only occasionally interact with the public; can frequently adapt to changes in workplace methods and routine; and can frequently perform jobs requiring a forced-production pace or assembly-line pace. (Tr. 18-22.)  This mental RFC allows Ferri to perform her past relevant work as an imaging services manager, which is a skilled job.  Ferri argues that this RFC finding is contradicted by all

of the medical opinions in the record which found that Ferri would be limited to work involving only one to two step instructions/tasks. Therefore, she asserts that ALJ Sharp's finding is unsupported by substantial evidence requiring remand.

1. *Evaluation of Medical Opinions*

The Social Security Administration promulgated a new rule regarding residual functional capacity determinations to govern all claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c (2017). Ferri applied for disability insurance benefits on January 2, 2020. (Tr. 239.) Therefore, the new rule applies. This rule addresses how the ALJ is to consider and evaluate medical opinions and prior administrative medical filings in evaluating a claimant's residual functional capacity and eliminated the longstanding "treating-physician rule," which required the ALJ to give a treating physician's opinion "controlling weight" in the absence of certain other specific findings. *See* 20 C.F.R. § 404.1527(c)(2) (describing the former "treating physician" rule).

The new rule states that the ALJ is no longer required to defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a). Instead, the ALJ is to consider all medical opinions and prior administrative medical findings using the same specific factors outlined in the rule, the most important of which are *supportability* and *consistency*. *Id.* at § 404.1520c(b)(2). "At bottom, 'supportability' is an inward-facing concept, requiring the ALJ to evaluate how well a given medical opinion is supported on the strength of the opinion's own reasoning, while 'consistency' is an outward-facing concept, requiring the ALJ to evaluate how consistent a medical opinion is with other evidence in the record." *Terry v. Comm'r, SSA*, No. 4:20-CV-618-SDJ, 2023 WL 2586304, at *5 (E.D. Tex. Mar. 21, 2023).

The remaining factors are treatment relationship with the claimant, specialization, and other factors, such as familiarity with other evidence in the claim. 20 C.F.R. § 404.1520c(c). The ALJ must articulate how persuasive he finds each of the opinions in the record and explain the consideration of the supportability and consistency factors. *Id.* at § 404.1520c(b)(2). The ALJ may, but is not required to, articulate the consideration of the other factors, unless the Commissioner finds that "two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same." *Id.* at § 404.1520c(b)(3). In those cases, the ALJ must articulate the consideration of the other factors.

In this case, ALJ Sharp discusses the following doctors' medical opinions in his decision regarding her mental impairments: Dr. Victor Hirsch, Ph.D. (independent psychological examiner); and Drs. Joel Forgus, Ph.D., Ann Naplin, Ph.D., and R. Chahal (state agency psychological consultants). He also discussed the opinion of Leah Neese, a licensed professional counselor; a telehealth exam performed by Vy Nguyen (a nurse practitioner); and an examination by Dr. Rick Boyles, M.D. (treating primary care physician). (Tr. 18-21.) ALJ Sharp found Dr. Hirsch's opinion not persuasive. (Tr. 22.) He stated that the opinion of Ms. Neese was not a vocationally relevant opinion since she did not offer any opinion on Ferri's limitations in the workplace. (*Id.*) He did not consider the exam by Dr. Boyles as a medical opinion. As to the state agency consultants, he found their opinions "partly persuasive." (*Id.*) Dr. Ahmed's opinions and exams are not mentioned at all in ALJ Sharp's decision.

As stated above, Ferri argues the opinions of her treating doctors (Drs. Ahmed and Boyles), the independent examiners (Drs. Hirsch and Jones), and the state agency psychological consultants (Drs. Forgus and Naplin) all contradict ALJ Sharp's mental RFC findings requiring remand of her

case.    (Doc. #17.)

2. *Discussion*

The only opinions that ALJ Sharp did not wholly reject and found "partly persuasive" are those of the state agency psychological consultants.    These doctors did not examine Ferri, but they did review her medical records.    On October 30, 2020, after reviewing Ferri's exam records (which included Dr. Boyles opinion dated October 21, 2019), Dr. Forgus, Ph.D. found that her mental RFC included: moderate limitations in the ability to understand and remember detailed instructions; moderate limitations in the ability to carry out detailed instructions, maintain attention and concentration for extended periods, and ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at consistent pace without an unreasonable number and length of rest periods; and no social interaction limitations. (Tr. 88-89.)    Dr. Forgus concluded that Ferri is able to understand, remember, and carry out detailed but not complex instructions, make decisions, concentrate for extended periods, interact with others, and respond to changes, but is limited in that she can only recall at a span of two-step commands.    (Tr. 89.)

On July 15, 2021, Dr. Anne Naplin, Ph.D., reviewed Ferri's records and made the same conclusion as Dr. Forgus with one additional limitation—moderately limited in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.    (Tr. 115-117.)

On July 22, 2021, Dr. R. Chahal, M.D. also reviewed Ferri's records to make a mental RFC assessment.    (Tr. 118-120.)    Dr. Chahal made the same findings as Dr. Naplin and concluded that "her ongoing treatment has continued to attenuate [her symptoms] partially and the residual baseline depressive/anxiety and PTSD [symptoms] may cause difficulties in understanding and

9

remembering complex instructions.   Claimant can understand and remember simple and detailed instructions of low complexity." Tr. 118.)   In addition, "due to her baseline mood/anxiety/ptsd [symptoms[ [claimant] may have occasional difficulties with maintaining CPP [concentration, persistence and pace] during the workday/workweek at times; however, she can maintain CPP on routinized and repetitive detailed tasks of minimal complexity for 2 hour periods and on simple tasks for extended periods to complete a workday/wk on a sustained basis; she can follow a stable schedule, that is not subject to frequent changes, within customary tolerances."   (Tr. 119.)

        As stated above, ALJ Sharp found these opinions "partly persuasive" and merely stated that the objective evidence supports his mental RFC.   (Tr. 22.)   ALJ Sharp's mental RFC states that Ferri can: 1) frequently interact with supervisors and coworkers but only occasionally interact with the public; 2) frequently adapt to changes in the workplace methods and routines; and 3) frequently perform jobs requiring a forced-production pace or assembly-line pace.   (Tr. 18.)   The first limitation is supported by the state agency examiners to the extent they gave no social interaction limitations (and more favorable to Ferri as it limits her interaction with the public). The second limitation is also supported by the state agency examiners.   All three examiners found that Ferri did not have adaptation limitations.   (Tr. 89, 117, 120.)   Dr. Chahal explained that Ferri is able to adapt to basic and routine workplace stress and change.   (Tr. 120.)

        With regard to the last limitation allowing frequent pace on the job, all three state examiners found that Ferri was "moderately limited" in performing at a consistent pace without an unreasonable number and length of rest periods.   (Tr. 89, 116, 119.)   They also stated that she could not understand, remember, and carry out complex instructions or recall more than two-step commands.   (*Id.*)   Dr. Chahal opined that Ferri could only do detailed tasks of minimal complexity for 2-hour periods and simple tasks for extended periods due to her limitations on

concentration, persistence, and pace.   (Tr. 119.)   Ferri argues that this limitation excluding complex instructions and tasks would exclude her highly skilled past relevant work as an imaging services manager, which has a skill level of 7.   (Doc. #15, at 10-11.)

The United States Department of Labor (DOL) determines the specific vocational preparation (SVP) numbers assigned to each job using information gathered by its Bureau of Labor Statistics (BLS).   *See* Occupational Requirements Survey, https://www.bls.gov/opub/hom/ors/archive/20200929/calculation.htm#:~:text=number%20of%20workers.,Specific%20vocational%20preparation%20(SVP),-Although%20the%20ORS (pub. Sept. 29, 2020).   There are nine SVP levels—the higher the SVP number, the more training you need to learn the job. *Id.*   The SVP levels represent the following amount of training: SVP 1-2 are unskilled; SVP 3-4 are semi-skilled; and SVP 5-9 are skilled.   *Id.*   SVP 7 is skilled and requires 2-4 years of training to learn the job. *Id.*

"*Skilled work* requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. Skilled work may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, reading blueprints or other specifications, or making necessary computations or mechanical adjustments to control or regulate the work. Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a *high level of complexity*."   S.S.R. 83-10 (1983) (emphasis added); 20 C.F.R. § 404.1568.   The SSA Program Operations Manual also defines skilled work as requiring "understanding, carrying out, [and] remembering complex instructions."   DI 25001.001 Medical and Vocational Quick Reference Guide, SSA PROGRAM OPERATIONS MANUAL SYSTEM (POMS) DI 25001.001A.75 (2022).

Ferri testified at the hearing that in her role of an imaging services manager, she worked as a radiology technician and also worked directly with radiologists, clerks, and technologists (approximately 9) to coordinate their work and schedule their radiology exams.  (Tr. 41-48.)   Her job was to supervise the workflow and schedules in the radiology department.   (*Id.*)   The vocational expert classified this past job under Dictionary of Occupational Titles (DOT) 187.117-062, which is entitled—Radiology Administrator.   (Tr. 63.)   Under DOT, this position performs the following tasks: "Plans, directs, and coordinates administrative activities of radiology department of hospital medical center: Conducts studies and implements changes to improve internal operations of department. Advises staff and supervisors on administrative changes. Assists hospital officials in preparation of department budget. Conducts specified classes and provides training material to assist in student training program. Directs and coordinates personnel activities of department. Recommends cost saving methods and hospital supply changes to effect economy of department operations."   DICOT 187.117-062 (G.P.O.), 1991 WL 671358 (1991).   Further, this position has a reasoning level of 5.   *Id.*

The DOT specifies the General Educational Development ("GED") reasoning level required for each listed job using six defined levels.  DOT, App. C, § III.  Reasoning level 1 requires the ability to "carry out simple one- or two-step instructions," whereas reasoning level 6 requires the application of "principles of logical or scientific thinking to a wide range of intellectual and practical problems."  *Id.*  In between these two extremes, reasoning level 3 requires a worker to "apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form.  Deal with problems involving several concrete variables in or from standardized situations."  *Id.*  Reasoning level 4 requires a worker to "apply principles of rational systems to solve practical problems and deal with a variety of concrete variables in situations

12

where only limited standardization exists.   Interpret a variety of instructions furnished in written, oral, diagrammatic, or schedule form." *Id.*   Reasoning level 5 requires a worker to "apply principles of logical or scientific thinking to define problems, collect data, establish facts, and draw valid conclusions. Interpret an extensive variety of technical instructions in mathematical or diagrammatic form.   Deal with several abstract and concrete variables." *Id*.

ALJ Sharp's finding that Ferri has the mental RFC to perform her past job as an imaging services manager is not supported by the opinions of the state agency examiners.   The only reason given by ALJ Sharp in rejecting this finding is, "they found mild and moderate B criteria limitations, as did the undersigned, but as to different criteria.   Overall, however, based on objective medical evidence at the hearing level, the psychological evaluators and undersigned found psychological limitations supporting the RFC, based upon the objective records.   Thus, their opinions were partly persuasive." (Tr. 22.)   ALJ Sharp, however, cites no objective evidence contrary to the rejected finding.   His evaluation at step two of her B criteria as to mental impairments only cites Ferri's functional reports that discuss her non-complex activities of daily living while at home, such as chores.   (Tr. 17.)

As stated by Ferri in her briefing, none of her medical providers or examiners support a finding that she can perform complex work.   On December 17, 2020, Dr. Denise Jones, Ph.D. and Dr. Hirsch opined that Ferri could only carry out, understand, and remember one-step instructions and that her emotional problems impact her ability to perform work at a reasonable pace.   (Tr. 674.)   Dr. Jones, in Dr. Hirsch's office, again examined Ferri on February 10, 2022.   (Tr. 2276-2281.)   She noted that Ferri appeared easily distracted by outside stimuli.   (Tr. 2277.)   Dr. Jones administered a Spectra[4] psychological test, which indicated that Ferri's "cognitive concerns scale"

---

[4] Inspired by the hierarchical–dimensional model of psychopathology and multivariate research, the SPECTRA (Blais & Sinclair, 2018) is a broadband, self-report inventory that measures psychopathology, cognitive complaints,

was significantly elevated and showing that she has trouble remembering things, loses things often, and finds it challenging to complete tasks.  (Tr. 2279.)  Dr. Jones concluded that Ferri has the ability to understand, carry out, and remember instructions for one step, and her emotional problems negatively impact her ability to persist in work-related activity at a reasonable pace.  (Tr. 2280.)  ALJ Sharp does not mention Dr. Jones but evaluates this opinion as Dr. Hirsch's opinion since he also signed off on this report.   ALJ Sharp rejects this opinion because it is based on self-reports, did not include formal testing, and is not consistent with the objective medical evidence.  (Tr. 22.)  He then notes her ability to drive, do chores, and prepare meals as contrary evidence.  (*Id.*)

The undersigned is perplexed by ALJ Sharp's rationale.  Dr. Jones did in fact perform formal testing on Ferri.  She used the SPECTRA psychology test.  Moreover, rejecting this opinion for being based on self-reports is illogical in the field of psychological evaluations.   In addition to the SPECTRA test, Dr. Jones and Dr. Hirsch relied on their observations, exam, and their evaluation of Ferri's credibility—all part of a typical psychological evaluation.  *See* Carolyn A. Kubitschek, Jon C. Dubin, SOCIAL SECURITY DISABILITY LAW & PROCEDURE IN FEDERAL COURT § 5:37 (Feb. 2023) ("Indeed, a psychological assessment 'is by necessity based on the patient's report of symptoms and responses to questioning' as for example, 'there is no blood test for bipolar disorder.' Nor may the report of a psychiatrist be rejected 'simply because of the relative imprecision of the psychiatric methodology.'   Psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields, and diagnoses will always

---

psychosocial functioning, and suicidal ideation. The SPECTRA's 96 items generate 15 nonoverlapping scales (i.e., 12 clinical scales, 3 supplemental scales) and a validity index. The 12 clinical scales were selected based on clinical importance and their strong empirical association to the higher-order dimensions, or spectra, of psychopathology: Internalizing, Externalizing, and Reality-Impairing.  *See* Blais, M. A., & Sinclair, S. J. (2019), *Introduction to the SPECTRA: Indices of Psychopathology: An assessment inventory aligned with the hierarchical-dimensional model of psychopathology [white paper],* PAR*,* available at https://www.parinc.com/Portals/0/Webuploads/samplerpts/PAR%20WHITE%20PAPER-SPECTRA.pdf.

depend in part on the patient's self-report, as well as on the clinician's observations of the patient. Such is the nature of psychiatry.") (internal citations omitted).

Other circuits have, likewise, pointed out the illogical nature of rejecting psychological findings on this ground. *See George v. Commissioner of Social Security Administration*, 2019 WL 6521958, 2 (S.D. Ohio 2019), *R. & R. adopted*, 2020 WL 1181276 (S.D. Ohio 2020) (court remanded and recognized that some psychiatric impairments are not amenable to objective diagnostic testing like physical impairments are and use of self-reported complaints and symptoms in conjunction with the treating source's own observations was permissible to support an anxiety diagnosis); *Pilgreen v. Berryhill,* 757 F. App'x 618, 619 (9th Cir. 2019) (finding that reliance on the claimant's self-reports is not a valid reason for rejecting a psychological evaluation) (citing *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) ("[T]he rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness.")); *Daigle v. Comm'r, Soc. Sec. Admin.*, No. 6:16-CV-01445, 2017 WL 5586750, at *8 (W.D. La. Oct. 30, 2017), *R. & R. adopted*, 2017 WL 5560157 (W.D. La. Nov. 17, 2017) ("One of the reasons the ALJ discounted Dr. Friedberg's opinions was because 'it apparently relied heavily on the claimant's self-report of his functional limitation.' This reflects one of the difficulties in evaluating a claimant whose impairments are psychological or mental in nature and, for that reason, cannot easily be defined, quantified, or confirmed by objective testing."); *Hopper v. Colvin*, 2014 WL 6882921, 8 (N.D. Okla. 2014) (observations during administering psychotherapy may support a finding of mental health impairments and accompanying limitations); *Langley v. Barnhart*, 373 F.3d 1116, 1122 (10th Cir. 2004) (A psychological opinion may rest either on observed signs and symptoms or on psychological testing); *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (finding a physician's opinion may "reflect expert judgement

15

based on continuing observation of the patient's condition over a prolonged period of time");

*Poulin v. Bowen*, 817 F.2d 865, 873–74 (D.C. Cir. 1987) ("[U]nlike a broken arm, a mind cannot

be x-rayed.").

Lastly, ALJ Sharp's notation regarding Ferri's ability to do mundane tasks such as driving,

chores, and preparing meals are not evidence that she can perform complex tasks in the workplace.

*See Pouncy v. Kijakazi*, No. CV 5:21-00404, 2022 WL 4394552, at *8 (W.D. La. July 27, 2022),

*R. & R. adopted*, 2022 WL 4389702 (W.D. La. Sept. 22, 2022) ("However, the court fails to see

how such mundane tasks, such as filling out disability questionnaires, being cooperative during

medical visits, preparing occasional meals, and babysitting grandchildren translate into the ability

to handle the stresses, challenges, and aggravations of the workplace on a day in, day out basis.").

Dr. Boyles completed a medical source statement on Ferri in 2019 finding that she was

depressed with a flat blunt affect, and he observed moderate limitations in attention, concentration,

and memory.   (Tr. 397.)   ALJ Sharp did not discuss this opinion or give it any weight.   The

Defendant argues this was not error because the opinion was rendered prior to her amended onset

date.   Dr. Boyles also examined Ferri after her onset date, and ALJ Sharp noted her exam on

February 3, 2022, which found that she had flat affect and memory issues but normal psychomotor

function, speech, thought and perception.   (Tr. 19.)   Although Dr. Boyles' opinion pre-dated her

onset date, it does not contradict the other medical opinions in the record on this issue and is still

relevant to her ongoing mental issues.   *See Fuller v. Kijakazi*, No. EP22CV00133FMMAT, 2023

WL 5807867, at *7 (W.D. Tex. Aug. 22, 2023), *R. & R. adopted*, 2023 WL 5811852 (W.D. Tex.

Sept. 7, 2023) ("ALJ erred in failing to articulate his consideration of Dr. Hand's medical opinions

even though they were recorded prior to plaintiff's onset date."); *Davidson v. Colvin,* 164 F. Supp.

3d 926, 942 (N.D. Tex. 2015) (holding that "medical opinions may not be ignored just because

they predate the disability onset date"); *Boone v. Colvin*, No. 3:14–cv–1881, 2015 WL 3999336, at *6 (N.D. Tex. July 1, 2015) (finding the ALJ erred in rejecting a medical opinion dated almost five years prior to the claimant's onset date).

Finally, Dr. Ahmed also opined on Ferri's mental impairment.    In October 2019, he diagnosed her with depression and anxiety stating that her condition will cause episodic flare-ups preventing a normal work routine, and he found that she had moderate limitations with attention and concentration as well as social limitations.    (Tr. 507-510.)    Although these opinions were rendered prior to Ferri's onset date, they are not irrelevant.    Dr. Ahmed continued to treat Ferri past her onset date and consistently made findings during her exams that she had poor attention, concentration, and memory recall.    (Tr. 533-589.)    After her onset date, on June 30, 2020, Dr. Ahmed filled out a form finding marked and moderate limitations in almost every category.    (Tr. 1109-1111.)    On December 21, 2020, VY Nguyen, F.N.P.-C in Dr. Ahmed's office opined in a written narrative letter that Ferri "continues to struggle with poor coping skills, poor focus, and memory affecting her daily activities."    (Tr. 673.)    ALJ Sharp did not mention any of Dr. Ahmed's opinions or exams at all in his decision.[5]    The Defendant asserts that this was not error because the opinions from 2019 pre-date her onset date (which is error as discussed above), and the 2020 opinions lack support and persuasiveness because they are check the box forms that are conclusory.    That reasoning would be more convincing if the form was contrary to other medical evidence in the record.    However, in this case, his report is consistent with the other medical opinions in the record finding that Ferri lacks the attention, focus and recall to perform complex tasks.    In any event, it was error for ALJ Sharp to not mention or assess Dr. Ahmed's opinions. *See Ladarrah W. v. Kijakazi*, No. 3:22-CV-00951-K-BT, 2023 WL 5156339, at *4–5 (N.D. Tex.

---

[5] ALJ Sharp does mention an exam by NP Nguyen on February 17, 2022.   (Tr. 20.)   However, this exam also notes that Ferri's recall and attention were poor.   (Tr. 2288-2289.)

July 20, 2023), *R. & R. adopted*, 2023 WL 5158047 (N.D. Tex. Aug. 10, 2023) ("The ALJ either

rejected PA McIntyre's medical opinion without explanation, or he gave it no consideration.

Indeed, the ALJ fails to mention PA McIntyre's medical opinion at all . . . "an ALJ is required to

consider all medical opinions in the record [and] [t]he regulations do not provide any exception to

that requirement for relevant opinions that pre-date a claimant's onset date.").

Although ALJ Sharp is not required to adopt the RFC verbatim from a medical opinion, he

is required to consider all of the medical opinions in the record and weigh them.   An ALJ is also

required to craft an RFC supported by substantial evidence.   The court in *Grennan* explained that

"the law only requires an 'accurate and logical bridge' within the ALJ's RFC explanation."

*Grennan v. Comm'r of Soc. Sec.*, No. 4:21-CV-00645-O-BP, 2022 WL 2056277, at *3 (N.D. Tex.

May 23, 2022), *R. & R. adopted*, 2022 WL 2053168 (N.D. Tex. June 7, 2022) (citing *Price v.

Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010)).   The ALJ's explanation here does not provide an

"accurate and logical bridge" between the evidence considered and the conclusions reached.

Regarding Ferri's ability to perform complex tasks requiring attention, focus, and recall as is

required by her past work as an imaging services manager, the psychological medical opinions all

opine that she is not functionally capable in this area.   ALJ Sharp does not point to any evidence

in the record to support his RFC finding that Ferri can perform the complex work of an imaging

services manager, which requires a reasoning level of 5.   Reasoning level 1 requires the ability to

"carry out simple one- or two-step instructions," which is the limitation given by the state agency

psychological consultants and Dr. Hirsch.   That is a large discrepancy, and no reasons were given

for a contrary finding except that Ferri can perform mundane daily tasks and that unspecified

objective evidence supports his conclusions.   *See Williams v. Astrue*, 355 F. App'x 828, 831-832

(5th Cir. 2009) (finding that an ALJ may not substitute his lay opinion for the uncontroverted

medical opinion of examining medical professionals who opined concerning the effects of a plaintiff's mental impairments); *Gonzalez v. Barnhart*, No. SA-05-CA-0282-RF, 2006 WL 1875912, at *5 (W.D. Tex. Jun. 30, 2006) ("An ALJ who discounts the diagnoses and opinions of specialists in the field without providing specific, legitimate reasons for doing so has 'impermissibly substitut[ed] a layman's view of a disorder in lieu of an expert opinion.'"). "The principle that an ALJ should not substitute his lay opinion for the medical opinion of experts is especially profound in a case involving a mental disability." *Salmond v. Berryhill,* 892 F.3d 812, 818 (5th Cir. 2018).

In conclusion, the ALJ did not properly consider the medical opinions, and his RFC determination was not properly based upon the medical evidence in the record, so his RFC determination is not supported by substantial evidence. The Fifth Circuit has held that, in the absence of substantial evidence, an ALJ's failure to rely on a medical opinion when resolving a claimant's occupational limitations constitutes reversible error. *Ripley*, 67 F.3d at 557-58; *Williams*, 355 F. App'x at 831-32. Thus, remand is required.

## V. RECOMMENDATION

ALJ Sharp's application of the sequential analysis contains error and is not supported by substantial evidence for the reasons discussed in the preceding sections. Consequently, the administrative decision should be remanded.

## VI. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c), each party to this action has the right to file objections to this report and recommendation. Objections to this report must: (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, and (3) be served and filed within fourteen (14) days after being served with a copy of this report. *See* 28

U.S.C. § 636(b)(1)(c) (2009); FED. R. CIV. P. 72(b)(2).  A party who objects to this report is

entitled to a *de novo* determination by the United States district judge of those proposed findings

and recommendations to which a specific objection is timely made.  *See* 28 U.S.C. § 636(b)(1)

(2009); FED R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and

conclusions of law contained in this report, within fourteen (14) days of being served with a copy

of this report, bars that party from: (1) entitlement to de novo review by the United States district

judge of the findings of fact and conclusions of law, *see Rodriguez v. Bowen*, 857 F.2d 275, 276–

77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings

of fact and conclusions of law accepted by the United States district judge, *see Douglass v. United

Servs. Auto. Ass'n*, 79 F.3d 1415, at 1428–29 (5th Cir. 1996) (en banc).

**SIGNED this the 26th day of January, 2024.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE